```
G168SCH1
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   UNITED STATES OF AMERICA,
4              v.                                15 Cr. 835 (JGK)
5   DAVID SCHWARTZ and
    ROBERT RIMBERG,
6
                   Defendants.
7
    ------------------------------x
8                                                January 6, 2016
                                                 5:00 p.m.
9
    Before:
10
                        HON. JOHN G. KOELTL
11
                                                 District Judge
12
                              APPEARANCES
13
    PREET BHARARA
14       United States Attorney for the
         Southern District of New York
15  BY:  ROBERT ALLEN
         Assistant United States Attorney
16
    SHER TREMONTE LLP
17       Attorneys for Defendant Schwartz
    BY:  MICHAEL TREMONTE
18       THERESA TRZASKOMA
19  MICHAEL BACHNER
         Attorney for Defendant Rimberg
20
21  Also present:  JOHN MOSCATO, Pretrial Services
                   ROBERT POTASH, FBI
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1                    (Case called)
2              THE DEPUTY CLERK:  All parties please state who they
3     are for the record.
4              MR. ALLEN:  Good afternoon, your Honor.  Robert Allen
5     for the government.  I am joined at counsel table by Special
6     Agent Robert Potash of the FBI and Pretrial Services Officer
7     John Moscato.
8              MR. BACHNER:  Good evening, your Honor.  Michael
9     Bachner on behalf of Robert Rimberg.  Nice to be in front of
10    you again.
11             THE COURT:  Good to see you again.  I note that your
12    client is present.
13             MR. BACHNER:  Yes, your Honor.
14             MR. TREMONTE:  Good afternoon, your Honor.  Michael
15    Tremonte and Theresa Trzaskoma for Mr. Schwartz.
16             THE COURT:  I note that Mr. Schwartz is present.
17             Mr. Allen, where are we?
18             MR. ALLEN:  Your Honor, both the defendants were
19    arrested on December 14.  Mr. Rimberg was presented and
20    arraigned in magistrate court on that date.  Mr. Schwartz was
21    presented on a 5(c)(3) in California, and so he stands to be
22    arraigned on the indictment today.
23             THE COURT:  Let me arraign Mr. Rimberg.
24             MR. ALLEN:  It's Mr. Schwartz, I apologize, who needs
25    to be arraigned.

1              THE COURT:  Thank you.
2              Are you David Schwartz?
3              DEFENDANT SCHWARTZ:  Yes.
4              THE COURT:  Are you being represented by Michael
5     Tremonte?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Before I go on, is this Mr. Schwartz's
8     first appearance?
9              MR. ALLEN:  Yes, your Honor, in New York.
10             THE COURT:  But he appeared in --
11             MR. ALLEN:  Mr. Schwartz was arrested in California
12    and was presented on a 5(c)(3) in California.
13             THE COURT:  So he was warned of his rights in
14    California?
15             MR. ALLEN:  Yes, your Honor, I believe so.
16             DEFENDANT SCHWARTZ:  Yes.
17             THE COURT:  If in doubt, I am perfectly happy to
18    provide the warnings to Mr. Schwartz.
19             Mr. Schwartz, you have the right to remain silent.
20    You need not make any statement.  Even if you have already made
21    any statements to the authorities, you need not make any
22    additional statements.  Any statements that you do make can be
23    used against you.
24             Do you understand that?
25             THE DEFENDANT:  Yes.

1          THE COURT:  You have the right to be represented by a
2    lawyer today and at all future proceedings in this case.  And
3    if you are unable to afford a lawyer, I will appoint a lawyer
4    for you.
5          Do you understand that?
6          DEFENDANT SCHWARTZ:  Yes.
7          THE COURT:  Are you being represented by Michael
8    Tremonte?
9          DEFENDANT SCHWARTZ:  Yes.
10         THE COURT:  Have you retained Mr. Tremonte to
11   represent you?
12         DEFENDANT SCHWARTZ:  Yes.
13         THE COURT:  Do you understand that if you could not
14   afford to retain counsel, I would appoint a lawyer for you free
15   of cost?
16         THE DEFENDANT:  Yes, your Honor.
17         THE COURT:  But you don't want me to do that, you
18   don't need that, is that right?
19         DEFENDANT SCHWARTZ:  I don't want you to, yes.
20         THE COURT:  Have you seen a copy of the indictment
21   against you?
22         DEFENDANT SCHWARTZ:  Yes, your Honor.
23         THE COURT:  Have you discussed it with Mr. Tremonte?
24         DEFENDANT SCHWARTZ:  Yes.
25         THE COURT:  Do you want me to read the indictment

G168SCH1

aloud to you in open court or do you wish to waive the reading of the indictment?

DEFENDANT SCHWARTZ:  Waive it.

THE COURT:  How do you plead to the charges against you in the indictment, guilty or not guilty?

DEFENDANT SCHWARTZ:  Not guilty.

THE COURT:  Defendant's plea of not guilty will be entered.  Thank you.

With respect to Mr. Schwartz, I have a pretrial services report that indicates that bail was set in California. Are there any applications with respect to that bail package or should the bail package just be continued?

MR. ALLEN:  Your Honor, the government would ask that the same bail be continued here.

MR. TREMONTE:  The defense requests modification of the -- I guess at this point it would be the imposition of a set of conditions that is somewhat different from the conditions that were set in California.

I wasn't present at that proceeding.  Pretrial services prepared a report at that time, which is attached to the Southern District pretrial services report.  Pretrial services in Los Angeles recommended what looks like a personal recognizance bond in the amount of $20,000 without anything other than standard conditions.  And I don't know how things unfolded there, and I don't know that Mr. Allen does either,

|     |                                                                        |
|-----|------------------------------------------------------------------------|
| 1   | but I think that in light of the circumstances here, and the           |
| 2   | very, very powerful moral suasion case, which I will describe,         |
| 3   | the $500,000 bond, coupled with the lien against real property         |
| 4   | is excessive, and we would request that all the conditions             |
| 5   | remain the same, except that the requirement of the lien be            |
| 6   | removed.                                                               |
| 7   |     Mr. Schwartz has very substantial ties to this |
| 8   | community. He grew up on Long Island in Far Rockaway. His              |
| 9   | mother lives --                                                        |
| 10  |     THE COURT: Can I just ask you, the only thing you're |
| 11  | objecting to is the security for the bond?                             |
| 12  |     MR. TREMONTE: That's correct.                  |
| 13  |     THE COURT: The security currently is what?    |
| 14  |     MR. TREMONTE: It's a $250,000 lien.           |
| 15  |     THE COURT: It's a $500,000 bond and the security is |
| 16  | what?                                                                  |
| 17  |     MR. TREMONTE: A lien against Mr. Schwartz's primary |
| 18  | residence in the amount of $250,000.                                   |
| 19  |     THE COURT: OK. What security do you suggest would be |
| 20  | sufficient?                                                            |
| 21  |     MR. TREMONTE: A $500,000 bond signed by the defendant |
| 22  | and one financially responsible adult.                                 |
| 23  |     THE COURT: What is the government's position? |
| 24  |     MR. ALLEN: Your Honor, the defendant agreed to the |
| 25  | lien in California. We would ask that it be continued here.            |

1  It has already been effected, is my understanding, and so I
2  don't think it's a tremendous imposition on the defendant to
3  continue the lien.
4       I also think it's appropriate for several reasons.  As
5  indicated in the pretrial services report, the defendant has
6  traveled overseas on a significant number of occasions in the
7  past several years.  The defendant has significant resources.
8  His house is worth between 1.8 to $2 million.  There is
9  $800,000 in equity.  He has a significant monthly income.  And
10 charges of this offense include laundering significant amounts
11 of money, which total $1.5 million.  So he obviously has access
12 to large amounts of money.
13      A bond which is secured by only one person, who is his
14 son, it will, of course, have a restraining effect, but it
15 would have less of a restraining effect than if there were a
16 lien.  Again, I don't think that it creates a tremendous burden
17 on the defendant, and it does ensure that he will travel from
18 California to New York for court appearances as required.
19      THE COURT:  The only lien is against the defendant's
20 own residence?
21      MR. TREMONTE:  The defendant's own residence, that's
22 correct.
23      THE COURT:  What is the burden of the lien?
24      MR. TREMONTE:  It's an encumbrance in the amount of,
25 approximately, a quarter of a million dollars on the home.  The

1    issue here is that although it's not, as the government

2    suggests, an especially burdensome additional imposition, it is

3    nevertheless a very significant financial sanction, which under

4    the circumstances, for the reasons I will present, is

5    completely unnecessary.

6             THE COURT:  I will certainly listen to you.  My

7    question really goes to the burden of the lien, $250,000 on the

8    defendant's personal residence.  Unless the defendant is

9    intending to sell the house, refinance the house, or do

10   something with the house, the only thing that the security does

11   is to provide security.

12            When I ask what is the value of the bail package to

13   assure the continuing presence of the defendant, it's actually

14   meaningless, except for the fact that it's secured by one

15   financially responsible person.  What would be preventing the

16   defendant from fleeing?  The moral suasion of one financially

17   responsible person against whom a judgment could be taken for

18   the size of the bond, and the government could go after any

19   assets that the defendant left behind.  I didn't see in the

20   report, I saw current income.

21            MR. TREMONTE:  The current income listed in the report

22   is approximately $200,000 a year.  What the report doesn't go

23   into is that Mr. Schwartz is financially responsible for a

24   number of other adults and dependent children.  And he is also

25   responsible for the medical care of two terminally ill persons:

1    The first of whom is his mother who resides in Far Rockaway, in
2    the home where Mr. Schwartz was raised; the second is his
3    sister, adult sister, who resides in Los Angeles.
4             Mr. Schwartz's mother and father resided in the Far
5    Rockaway home together until December of 2015 when Mr.
6    Schwartz's father passed away.  Mr. Schwartz was principally
7    responsible for the care of his father.  Just a week ago his
8    mother, the surviving spouse, was diagnosed with terminal
9    cancer.  Mr. Schwartz is financially responsible for her and
10   principally responsible for her medical care.  And when I say
11   principally responsible, it's not a euphemism; he is the only
12   one who is in a position to oversee and manage her care.
13            Also, when he is here in New York, which over the past
14   couple of years he has been here monthly, now he will likely be
15   here weekly, he resides in the family home, which he is a
16   one-sixth owner of as a beneficiary of a family trust.
17            In addition to being financially responsible for his
18   mother and his sister and for their care -- and I don't think I
19   mentioned his sister is also terminally ill.  She is awaiting a
20   kidney transplant which Mr. Schwartz recently arranged.  He is
21   also financially responsible for his brother, Steven Schwartz
22   who resides in Brooklyn, and he visits his brother at least
23   monthly.
24            He also has got three dependent children in his home:
25   One is a 15-year-old son who suffers from autism; the other

older son who is 23 is in college, resides in Mr. Schwartz's residence in California between semesters; and Mr. Schwartz also has an adult son, 27 years old, who also resides with him and who is dependent on him financially.

I think under these circumstances, number one, it is certainly possible, if not likely, on this income that Mr. Schwartz will end up seeking to refinance his principal residence in Los Angeles. The $200,000 is very unlikely to cover both the expenses that he has got in connection with his dependents -- his mother, his brother and his sister -- his travel from the East Coast to West Coast, and now the legal fees that he is going to incur in connection with defending this action. I think under these circumstances, the moral suasion case is very powerful, if not overwhelming, and I think that the $250,000 lien is really well beyond what is required to ensure the defendant's presence here.

MR. ALLEN: Just very briefly.

THE COURT: Could I just make a couple of observations?

I could certainly conceive of alternative bail packages which might, for example, include increasing the number of financially responsible persons who are on the $500,000 personal recognizance bond. It's also true that there is no showing that the lien on the house has any current problem in terms of burden. The bail package is always subject

1   to reconsideration so that if it became necessary for the
2   defendant to refinance the house, and if the lien stayed, I
3   could reconsider the bail package at that time. But let me
4   listen to the government.
5          MR. ALLEN: Your Honor, you were wise to cut me off
6   because I was just going to say the same thing that you had
7   said, which is that to the extent the defendant needs to
8   refinance his house, we can consider whether it's appropriate
9   to rescind the lien at that time. But now, without the lien, I
10  think the bond is not particularly strong. It's, in essence, a
11  bond which admittedly is a large amount, but it's only cosigned
12  by one financially responsible person. I think it makes sense
13  with a lien, and without I don't think it's appropriate given
14  the facts of the case.
15         MR. TREMONTE: If I may suggest, I think I am certain
16  we can find at least another two financially responsible
17  persons to sign on to the bond within a matter of days.
18         THE COURT: Let me suggest that you have some
19  conversations with the government about increasing the number
20  of financially responsible persons, and I am always here to
21  reconsider the bond. So at this point I will leave the bond as
22  it is, and if you want to propose an alternative package, I am
23  certainly available.
24         MR. TREMONTE: Thank you, your Honor.
25         THE COURT: So the bail package will stay as it is at

1    the moment.  Of course, it's without prejudice to an
2    application to change it.
3               Yes, Mr. Bachner.
4               MR. BACHNER:  Good evening, your Honor.
5               Your Honor, at this point, we are not going to be
6    making any applications to modify the bail, although we may
7    come to your Court's attention later.  But there is one
8    modification on consent, and that is that Mr. Rimberg's travel
9    restrictions, which are presently to the Eastern and Southern
10   District of New York, and I think New Jersey, be expanded to
11   domestic travel.  Mr. Rimberg does do a lot of domestic travel,
12   and while generally there is never a problem with it, there is
13   a lot of letter writing that has to go along with that.  Mr.
14   Rimberg has posted a substantial bail package presently secured
15   by his home.
16              THE COURT:  It's on consent?
17              MR. ALLEN:  Yes, your Honor.
18              THE COURT:  So Mr. Rimberg's travel conditions under
19   the bail are extended to the continental United States.
20              Government, tell me about the case.
21              MR. ALLEN:  The allegations in this case are the two
22   defendants, with several co-conspirators, participated in a
23   money laundering conspiracy.  The conspiracy began in late 2009
24   with the creation of a hedge fund that was planned to be used
25   to launder money by a Colombian drug trafficker.  That hedge

1  fund was never actually used, but after its creation, it was
2  actually incorporated, the defendant laundered money in three
3  transactions:  A $200,000 transaction, a $300,000 transaction,
4  and, finally, a $1 million transaction.
5          There were three months of wiretaps on the
6  co-conspirator that were between November and January of 2010
7  and 2011.  There were e-mail search warrants at the time, and
8  there were a series of consensually recorded meetings that
9  occurred in late 2010 and at various times continuing up
10 through the present.
11         So that is the basis of the allegations and, of
12 course, I can go into greater detail if the Court would like.
13         THE COURT:  What is the current status of producing
14 discovery to the defendants?
15         MR. ALLEN:  We have made one production of discovery
16 at this time, which was made available to defendants on January
17 4.  That production included, basically, affidavits and orders
18 received by the government, which included pen registers, the
19 wiretap application orders, as well as the e-mail search
20 warrant, a location warrant, and transcripts of consensually
21 recorded meetings.  It was approximately 2,000 pages of
22 discovery.
23         We anticipate and have gotten hard drives and a thumb
24 drive from the defendants, which will enable us to produce the
25 actual recordings from the wiretaps, as well as the other

1   materials in this case.  There are approximately 5,300
2   intercepted calls that have recordings, in other words,
3   intercepted calls that did not just result in a hang-up.  610
4   of those were pertinent.  There are around 3700 intercepted
5   text messages of which 72 are pertinent.  There are a number of
6   recordings from meetings, both video and audio.  And there was
7   a recorded post-arrest statement from one of the two
8   defendants.
9            So overall, I think the discovery is quite voluminous.
10  We have made a first production.  I anticipate producing the
11  remainder within the next 14 days, although, as is often the
12  case, there will likely be things that come up in the couple of
13  weeks that follow.
14           (Continued on next page)

1              THE COURT:  Thank you.

2              What I would normally do, the government says that

3     subject to underwritings coming up, they estimate the bulk of

4     discovery within two weeks.  I would set the case down for

5     another conference after the defense has had an opportunity to

6     review the discovery and to determine what motions, if any, the

7     defense intends to make, and I would think that I should set it

8     down for sometime after the end of February, sometime in March

9     perhaps.

10             If the parties think that is enough time and that is a

11    reasonable schedule, March 1 at 4:30, is that good for

12    everyone?

13             MR. TREMONTE:  Yes, your Honor.

14             MR. BACHNER:  Yes, your Honor.

15             MR. ALLEN:  Yes, your Honor.

16             THE COURT:  Another conference March 1 at 4:30.  I

17    will exclude prospectively the time from today until March 1,

18    2016, from speedy trial calculations.  The continuance is

19    designed to ensure effective assistance of counsel, it is

20    designed to allow the defense to review discovery and to

21    determine what motions, if any, the defense intends to make.

22    The court finds that the ends of justice served by ordering the

23    continuance outweigh the best interest of the defendants and

24    the public in a speedy trial.  This order of exclusion is made

25    pursuant to 18 U.S.C. 3161(h)(7)(A).

1        What's the status of the speedy trial clock?

2        MR. ALLEN:  Your Honor, Mr. Rimberg was presented
3   December 14, and time was excluded at that point until today.
4   There have been no days that have been burned with respect to
5   Mr. Rimberg.

6        Mr. Schwartz has not actually appeared in New York
7   until today.  My understanding is that there would be no
8   movement on the speedy trial clock either.

9        THE COURT:  In any event, there is only one speedy
10  trial clock.  The government says no time off the speedy trial
11  clock.

12       Do the defendants know off the top of their heads
13  whether they agree with that?  If not, the defendants send me a
14  letter if they have any position other than the government says
15  no time off the speedy trial clock.  I always want to make sure
16  we're all on the same speedy trial clock.

17       So if defense counsel believes that there is any other
18  time that is off the speedy trial shock, write me a letter
19  within a week letting me know that there is an issue with
20  respect to the speedy trial clock.

21       MR. BACHNER:  Yes, your Honor.

22       MR. TREMONTE:  Yes, your Honor.

23       THE COURT:  Anything else?

24       MR. ALLEN:  Not from the government, Judge.

25       MR. TREMONTE:  No, your Honor.

G16SSCH2

1            MR. BACHNER:  No.  Thank you, your Honor.
2            THE COURT:  Good afternoon, all.
3            MR. ALLEN:  Thank you, Judge.
4            MR. TREMONTE:  Thank you, Judge.
5            (Adjourned)