UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -vs.- | (S4) 15-CR-835-02 (JGK) |
| ROBERT RIMBERG, | |
| Defendant. | |

SENTENCING MEMORANDUM SUBMITTED ON BEHALF OF
ROBERT RIMBERG

BACHNER & ASSOCIATES, P.C.
39 Broadway, Suite 1610
New York, NY 10006
(212) 344-7778
*Attorneys for Robert Rimberg*
October 2, 2017

## **TABLE OF CONTENTS**

INTRODUCTION........................................................................................1

I.      THE COURT SHOULD IMPOSE A NON-PRISON SENTENCE ON MR.
        RIMBERG BASED UPON A). HIS DEDICATION AND SERVICE TO THE
        COMMUNITY, B. THE COLLATERAL CONSEQUENCES OF HIS
        CONVICTION, C.) HIS FAMILY CIRCUMSTANCES, AND D.) OTHER
        SIGNIFICANT FACTORS.....................................................................2

II.     CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)(1).............................3

III.    DESPITE HIS MISCONDUCT IN THIS CASE, ROBERT RIMBERG IS
        A MAN OF INTEGRITY AND A GENEROUS MEMBER OF THE
        COMMUNITY...................................................................................12

IV.     THE LOSS OF MR. RIMBERG'S LAW LICENSE AND ABILITY TO
        EARN A LIVING IN HIS PROFESSION, AS WELL AS THE NUMEROUS
        OTHER COLLATERAL CONSEQUENCES HE WILL SUFFER,
        SUPPORT A SUBSTANTIAL VARIANCE.............................................23

V.      MR. RIMBERG IS HIGHLY UNLIKELY TO RE-OFFEND AND IS NOT
        A DANGER TO THE PUBLIC.............................................................27

CONCLUSION...........................................................................................33

## TABLE OF AUTHORITIES

**Cases**

Gall v. United States,
    552 U.S. 38 (2007)................................................................................23, 25, 26

Koon v. United States,
    518 U.S. 81 (1996)................................................................................31

United States v. Booker,
    543 U.S. 220 (2005)................................................................................30

United States v. Canova,
    412 F.3d 331 (2d Cir. 2005)................................................................................31

United States v. Fred E. Cooper,
    394 F.3d 172 (3d Cir. 2005)................................................................................32

United States v. Coughlin,
    2008 WL 313099 (W.D. Ark. 2008)................................................................................25, 26

United States v. Fishman,
    631 F.Supp.2d 399 (S.D.N.Y. 2009)................................................................................31

United States v. Greene,
    249 F.Supp.2d 262 (S.D.N.Y. 2003)................................................................................32

United States v. Nesbeth,
    188 F.Supp. 3d 179 (E.D.N.Y. 2016)................................................................................24

United States v. Oldani,
    2009 WL 1770116 (S.D.W. Va. 2009)................................................................................28, 29

United States v. Pauley,
    511 F.3d 468 (4th Cir. 2007)................................................................................23, 24

United States v. Pizzino,
    419 F. App'x 578 (6th Cir. 2011)................................................................................27

United States v. Pritchard,
    392 F.App'x 433 (6th Cir. 2010)................................................................................27

United States v. Thomas,
    498 F.3d 336 (6th Cir. 2007)................................................................................27

United States v. Ty Warner,
    792 F.3d 847 (7th Cir. 2015)................................................................................30

United States v. Wunder,
    2010 WL 654754 (D. Kan. 2010)................................................................................28, 29

**Statutes**

5 CFR §§ 970.110(c) *et seq.* …………………………………………………………………25

12 CFR § 336.4…………………………………………………………………………………24

12 CFR § 1026.36………………………………………………………………………………24

20 CFR § 404.1717……………………………………………………………………………...24

48 CFR Part 9, Subpart 9.4 *et seq.* …………………………………………………………...25

7 U.S.C. § 12a(3)(D)……………………………………………………………………………24

12 U.S.C. § 1818 *et seq.* …………………………………………………………………….....24

15 U.S.C. 80b-3 *et seq.* ………………………………………………………………………..24

18 U.S.C. § 1960……………………………………………………………………………...1, 29

18 U.S.C. § 3553………………………………………………………………….......*passim*

18 U.S.C. §§ 3561(a)(1-3)……………………………………………………………………….30

18 U.S.C. § 3661…………………………………………………………………………………1

18 U.S.C. § 5330…………………………………………………………………………………3

Executive Order No. 12,549……………………………………………………………………25

Executive Order No. 16,689……………………………………………………………………25

U.S.S.G. § 5B1.1………………………………………………………………………………...29

U.S.S.G. § 5H1.11………………………………………………………………………………31

**Other Authorities**

Advisory Council of Judges of National Council on Crime and Delinquency, *Guides for Sentencing* (1957)…………………………………………………………………………………26

*Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing Guidelines Release One* (May 2004).............................................................27, 28

*Recidivism and the "First Offender", Release Two* (May 2004)……………………….……28

Special Committee of the New York State Bar Association, "*Re-Entry and Reintegration: The Road to Public Safety,*" (2006)……………………………………………………………….......25

This memorandum is respectfully submitted on behalf of the defendant, Robert Rimberg, as an aid to this honorable Court in arriving at a fair and just sentence.

## INTRODUCTION

On January 5, 2017 Mr. Rimberg pleaded guilty before Your Honor to a one count Information charging him with Operating an Unlicensed Money Transmitting Business in violation of 18 U.S.C. § 1960. Presentence Investigation Report ("PSR") at ¶ 3. In his allocution, Mr. Rimberg admitted his guilt and expressed remorse for his crimes. Mr. Rimberg's Plea Agreement with the Government contains a sentencing guideline offense level of 13 with an advisory Guideline range of 12-18 months imprisonment, a fine of $3,000 - $30,000, a mandatory $100 special assessment, and forfeiture and restitution in an amount to be ordered by the Court. PSR at ¶¶ 3, 85-96.  Significantly, the Probation Department recommended that your Honor "impose a sentence of one year probation." PSR Addendum dated April 10, 2017 at pp. 23-24.

This memorandum is offered to provide the Court with information relevant to the individual background and disposition of Mr. Rimberg in accordance with 18 U.S.C. §§ 3553(a) and 3661.  This Court is already familiar with the facts of this case having presided over Mr. Rimberg's guilty plea and other proceedings. In other respects, though, this Court has not yet had the chance to learn about Mr. Rimberg as a person. Here, we seek to further familiarize this Honorable Court with Mr. Rimberg separate and apart from his criminal conduct.

This memorandum will outline the disastrous impact Mr. Rimberg's criminal conduct has already had on his family and on his personal and professional life and will also highlight the many people and organizations Mr. Rimberg has tirelessly helped through his charitable endeavors. We will then suggest that the Court adopt the recommendation of the Probation Department and impose a non-prison sentence.  We also urge that no term of probation or supervision should be imposed. It is respectfully submitted that a non-prison sentence is appropriate under the unique circumstances of this case and as guided by the parsimony clause of 18 USC § 3553 which requires that the sentence imposed be "sufficient, but not greater than necessary" to meet the goals of § 3553.

## POINT I

**THIS COURT SHOULD IMPOSE A NON-PRISON SENTENCE ON MR. RIMBERG BASED UPON A.) HIS DEDICATION AND SERVICE TO THE COMMUNITY, B.) THE COLLATERAL CONSEQUENCES OF HIS CONVICTION, C.) HIS FAMILY CIRCUMSTANCES, AND D.) OTHER SIGNIFICANT FACTORS.**

Mr. Rimberg has demonstrated by his plea of guilty that he accepts responsibility for the criminal conduct in which he engaged. As discussed below in detail, we strongly believe that the factors set forth in 18 USC § 3553(a) call for a non-prison with no period of probation or supervision.  Our request reflects Mr. Rimberg's extraordinary charitable contributions, his family circumstances, his status as a first time offender, and the serious collateral consequences, including the loss of his law license, which flow from his conviction.  The non-probationary sentence will allow Mr. Rimberg to create a livelihood from the

2

rubble of his misconduct free from some of the obstacles inherent in the probationary system.

## POINT II

## CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)(1)

Based upon the factors contained in 18 USC § 3553(a)(1), a variance from the advisory Guidelines of 12-18 months is merited.  We discuss these factors below seriatim.

### The Nature and Circumstances of the Offense

Mr. Rimberg acknowledged in his plea allocution that in December 2010 he operated an unlicensed money transmitting business in Manhattan, established to affect more than one interstate wire transmission, and which was not registered as required under 18 U.S.C. § 5330 within 180 days of its establishment.  PSR at ¶ 28.

The relevant background facts as set forth in the PSR are as follows. On December 6, 2010, co-defendant Francisco Saez met with CS-1, an individual working with the government, at Mr. Rimberg's office in New York. PSR at ¶ 18. During this secretly videotaped meeting, Mr. Rimberg gave Mr. Saez a money counter and then left for the remainder of the time. *Id.* CS-1 gave Mr. Saez approximately $1 million in cash, and later provided information for a bank account controlled by law enforcement where the money was to be deposited. *Id.* Thereafter, Mr. Rimberg's colleague, David Schwartz provided Mr. Rimberg directions to transfer approximately $250,000.00. The government

3

acknowledges, and the plea agreement provides, that Mr. Rimberg had a minor role in the transaction and did not know that the funds were related to narcotics transactions, and that Mr. Rimberg simply sent the money as directed by Mr. Schwartz to an account controlled by Mr. Schwartz. PSR at ¶ 20.

### **History and Characteristics of Robert Rimberg**

Robert Rimberg, age 55, was born and raised in Brooklyn, New York, together with older siblings Janet and Alan. PSR at ¶¶ 46, 48. Janet, who is 60 years old, teaches kindergarten and lives in Brooklyn. PSR at ¶ 47. Alan died in 2016. PSR at ¶¶ 47, 48. Robert is estranged from his sister and was estranged from his brother until they reconciled about a year before his death in 2016. PSR at ¶ 48. Mr. Rimberg's father, Edward, died in approximately 2007 when he was in his seventies. PSR at ¶ 46. His mother, Bernice, died in 1994, at the age of 62. PSR at ¶ 46.

Mr. Rimberg's mother worked for an import/export business as a customs broker, and his father was a chemical engineer who consulted and designed sewage plants worldwide. PSR at ¶¶ 46, 49. As a child, Mr. Rimberg was reared in an abusive family environment where his father verbally abused and cheated on Robert's mother. *Id.* When Robert was in high school the abuse got worse. When Robert was 21 years old his parents divorced. PSR at ¶ 49. Following the divorce, Robert's father moved to Taipei, leaving his mother destitute, and becoming estranged from Robert for the next 22 years, seeing him only once during that time at a family gathering 13 years after he abandoned the family.

4

PSR at ¶ 50. A year before he died, Robert reconciled with his father and stayed in contact with him until his death. PSR at ¶¶ 46, 51.

Mr. Rimberg's difficult relationship with his father left him determined to be the father to his children that he never had. By all accounts, he has succeeded. As his wife Riki explains in her letter to Your Honor, "[h]e is so concerned that he will be like his father that he has gone to the other extreme."

> … The man you have seen before you has a very tough exterior. However, inside he is pure "mush" when it comes to his family. His life revolves around his family. Robert had somewhat of a difficult childhood, growing up in a home where his father was often absent as he traveled a lot for business. When his father was home, he was verbally and emotionally abusive to his mother. They eventually divorced and his father moved to Taiwan with very little contact with the family. Robert worked throughout college and law school to help his mother support their family. There is a bright side to all of this as my family has benefitted from Robert's experience. He is so concerned that he will be like his father that he has gone to the other extreme. Robert is a true Patriarch. He is kind, generous, tough when he needs to be, but very loving. We are all loved by him and we feel the love. We are all protected by him and we feel that too. That allows us to lead the lives that we are so lucky to have. …

Exhibit A.

Mr. Rimberg graduated Yeshiva of Flatbush Joel Braverman High School, Yeshiva University, and Cardozo Law School. PSR at ¶¶ 65-67. After graduating from law school in 1986, Mr. Rimberg worked for the NYS Workers' Compensation Board where he drafted legislation. After leaving that position, Mr. Rimberg began his litigation career at the law firm of Semel Boeckman and then moved onto the firm of Lester Schwab Katz and Dwyer. Ten years later, in 1996, he formed Rimberg & Associates in Manhattan. In 2004 Rimberg &

Associates merged with Israel Goldberg to form Goldberg & Rimberg (currently Goldberg, Rimberg & Weg), a civil litigation firm in Manhattan, where he is a partner. ¶¶ 68-69.

## Current Family Circumstances

Riki Rimberg (nee' Roth), a Physical Therapist, is Robert's wife of 30 years. Together, they have three successful and happy children: Alyx (26 years old), Zachary (24 years old), and Maxx (21 years old). Alyx has a Master's degree in Reading Literacy and teaches children with learning disabilities at the Windward School in Manhattan. She is married to Daniel Zelkowitz, a Vice President of Operations for a sales and marketing company. Zachary received a degree in Hospitality Management from Boston University and is the CEO of Skid Hotels, LLC. His wife, Rachel earned her Master's degree in Speech Therapy and works in Brooklyn. Maxx is a sophomore at Baruch College, where he is studying business. He lives with his parents.

In the various letters to Your Honor, Robert Rimberg is lauded by his wife as a "true Patriarch" (Exhibit A), and by a close friend, Richard A. Solomon, Esq., as a "caring and loving father and husband," whose children are exceptionally attached to him. (Exhibit B)  It is clear that Robert's absence from the family would be unnecessarily detrimental.  As Riki Rimberg writes:

> … We love him to death and need him here with us. My children are at the point in their lives where there are many changes and transitions happening. … We need Robert to be here to guide them with his experience and expertise. We are also hoping for grandchildren soon and would like him to be here to enjoy that next phase of his life. … Robert is the center of our family's world. … I have tried as best I can to describe to you the … doting and caring father of our children; and the center of our family. … I am

confident that whatever punishment you impose will give appropriate consideration to the impact Robert's absence will have on our family. We simply need him here with us. …

Exhibit A.

Mr. Rimberg's in laws, Shuly and Albie Roth, write that they are "very blessed" for the very deep commitment Robert has to their daughter and to their grandchildren despite the fact that his father was not a good role model.

>…Despite the lack of an appropriate paternal role model, Robert became an exceptionally devoted husband. He is insightful, sensitive, responsible and loving. We are very blessed to see this special and committed relationship which he shares with our daughter in every aspect of his life. …

>…His relationship and concern for his children is boundless and his interaction with them is a pleasure to observe. He has always been available to them despite his many professional demands. When the children were younger, he was always in the audience, cheering them on, no matter what activity they were participating in. He frequently has individual dinner dates with them, enabling him to catch up on their latest activities and news. They share an evening of laughter, guidance, and support. This enables him to make recommendations and acknowledge their achievements. His communication with his children is remarkable and they have all grown up to be achievers and successful human beings. Robert's intuitive sense of parenting has resulted in this special bond with his children. It has been achieved with discipline, love, and affection. His efforts have been returned in kind as we are able to see their love and respect for him. …

Exhibit C.

Mr. Rimberg's daughter, Alyx Rimberg, credits her father's unfaltering support and constant presence in her life with her current success and happiness.

>As a little girl, my father created a fairytale for me to live in. …He crafted a world that contained endless possibilities and a lifetime of opportunities. …He was, and still is, the person in my life who

7

makes the impossible possible. As life got harder, as every teenager experiences, mysterious paperweights with inspirational quotes reminding me never to give up appeared. When I visited Concentration Camps in Poland on an organized field trip my father was the only parent to email a letter to the staffers every day. Each letter reminded me of the importance of staying true to myself and embracing where I came from as a religious Jew. On every occasion he highlights for me the incredible, and often unbelievable, role women play in history. The way he tells stories, every story has a heroine. ... As an adult ... I still appear at his office uninvited because I know I'm always welcome. And I still call him when life doesn't go my way, because he always encourages me to move my own mountains, rather than wait for someone to move them for me. ...

Exhibit D.

Alyx's husband, Daniel Zelkowitz, writes about how Robert welcomed him into the family when he sought permission to marry Alyx, and the vital role Robert has in the family structure:

> ... Each time I saw Robert with my mother in law, Riki, and his children, I understood more and more. Robert has, and continues to be, a shining example to myself and all those around him in how to remember what's important in life, how to care and love unconditionally, and to leave the world just a little bit of a better place than you left it. Alyx and I perpetually seem to enter new stages in our life. No matter what challenges we face, or what joys we get to experience, Robert has always been there for us. Sometimes it is with sage advice and council, and sometimes it's just with a listening ear and a smile. Since I have joined the Rimberg family I have learned that Robert is central to lives of his family members and as a new addition I have quickly learned why. ...

Exhibit E.

Robert's son, Zachary, credits his dad's constant emphasis on the importance of family for his close relationship with his brother and sister his and father's constant support and guidance for his professional success:

... He told my siblings and me over and over that, "people will come and go through your life, but family is forever." I owe my relationship with my siblings to his nurturing words. ...

...My company Skid Hotels LLC could not have come to fruition without my father's careful guidance and unwavering support. Without his fatherly nudges, I would never have had the confidence, or the ability, to leave my last job. ... Throughout my life, my dad made me feel special, provided a support system, and continues to give me the tools to achieve anything & (sic) everything I can ever imagine. I have no doubt that every kid thinks the world of his father, but I know that mine is truly the best....[1]

Exhibit F.

Another example of Mr. Rimberg's commitment to family was when he was contacted a few years ago by his older and long-estranged brother, Alan. Riki Rimberg describes Robert's caring, compassion, and generosity to his brother:

... Alan was estranged from the family for many years, opting to live in places like India, Cambodia and Thailand. Sporadically he would contact us. About a year and a half prior to his death we received a phone call from him that he had fallen and was having difficulty walking. He was frightened. We pushed him to see a doctor where he was diagnosed with malnutrition and a hip fracture that required surgery. Robert paid for the surgery and continued to support his brother financially for the next year so that he could get back on his feet and get himself healthy again. ...

Exhibit A.

Later, in August 2016, Alan again called Robert and said that he was having trouble breathing and could not walk more than a short distance. Robert

---

[1] Indeed, only recently, on September 5, 2017, Zachary signed a contract of sale to purchase his first property – a hotel in Kentucky.  Zachary also attributes this milestone to the lessons taught by his father.

arranged for Alan to see a doctor, who found that he was suffering from lung cancer which had spread to his spine and liver. Robert tried to bring Alan to the United States so he could receive better medical care, but he was too sick. He then arranged for Alan to go to a nursing home in Bangkok where he would receive the around the clock, specialized medical care he needed. Knowing that his brother was alone and scared, Robert also had acquaintances living in Thailand visit his brother and check in on his well-being. Robert also spoke to his brother and his doctors daily to make sure everything possible was being done, and that he did not feel alone. Riki Rimberg describes how Robert once again sprang into action to do everything he could to help his brother—who was alone, scared, broke, and terminally ill in another country where specialized medical care is lacking—simply because he was a family member and needed help. Riki is "quite proud of [Robert] for stepping up to the plate both financially and emotionally". She describes Alan's second request for help in her letter to Your Honor:

> … In August of 2016 we received another call from [Alan]. He said he was not feeling well and was having difficulty breathing. He was unable to walk more than 100 ft. He was seen by a doctor who diagnosed him with lung cancer [which had metastasized] to the spine and liver. Alan was too ill to fly back to America. Robert arranged for him to be moved to Bangkok where there were better hospitals and we had acquaintances that could check on him. Robert made arrangements for Alan to be placed in a nursing home as he could not care for himself. He was well cared for, clean and most important, he felt safe. He stayed there until he died in October. Robert was in touch with the doctors and spoke with his brother nightly so that he would not feel all alone. Robert took on this costly responsibility without knowing how long it would go on for. He did it because it was the right thing to do. …

10

Exhibit A.

Rabbi Yosef C. Kantor is the Chief Rabbi of the Thailand Jewish community. He also describes the extraordinary kindness and generosity he witnessed from Robert after encouraging Alan to contact him for help.

> … Alan Rimberg contacted us as he was diagnosed with lung cancer. Alan had been in infrequent contact with his younger brother Robert. They did not see eye to eye on a host of things. Alan did not really expect that Robert would help. He understood that people don't like when relationships are established only for asking for help.… Robert was contacted and he showed his true colors. Of brotherhood, of charitableness and of care and compassion. Robert let bygones be bygones and focused on doing all that he could to help his brother regain his health. He paid for his hospitalization and for his general upkeep in a way that I found admirable and quite extraordinary. …

Exhibit G.

According to Rabbi Kantor, when Alan succumbed to his illness almost a year later, Robert made sure that his brother's remains "were disposed in the most caring way possible", and arranged and paid for his funeral:

> …Sadly, Alan died almost a year later. Once again, Robert did not shy away from taking the burden and expense of disposing of Robert's remains in the most caring way possible. Full funeral expenses were paid by Robert on behalf of this brother with whom he had almost nothing in common and with whom he did not really grow up due to large age difference. The compassion exhibited by Robert, and the fact that he was so charitable in his behavior is a testament in my opinion to his sterling character and strong moral ethic. It is not often that I meet up with such a special person. Suffice it to say that I have not found this behavior to be the norm in my experience. …

Exhibit G.

Mr. Rimberg's in-laws, Shuly and Albie Roth, describe how he sets an example of always making sure to care of one's family, no matter how difficult the circumstances. As an example, they cite Robert's care for his estranged brother Alan.

> …Robert's relationship with his older brother was more complex, as he resided alone for many years in Thailand. This sibling connection, which once again displayed Robert's sense of compassion, loyalty, and concern for family. When it became known to him that his brother was ill, he secured medical assistance and provided the care needed during his terminal illness. His brothers (sic) burial last year, was arranged so that all religious traditions were observed. He once again set an example of familial responsibility. …

Exhibit C.

## POINT III

## DESPITE HIS MISCONDUCT IN THIS CASE, ROBERT RIMBERG IS A MAN OF INTEGRITY AND A GENEROUS MEMBER OF THE COMMUNITY.

Numerous colleagues, friends, and former clients have written to Your Honor to voice their support for the Robert Rimberg they know. Each writer, in his/her own way, wants Your Honor to consider Mr. Rimberg in his totality because they know that his misconduct is diametrically inconsistent with the extremely generous, good and honest man they have always known.

A. Mitchell Greene, Esq., is a senior partner in a New York City based law firm.  Mr. Greene has worked on cases with Robert as both an adversary and co-counsel, and has a longstanding personal and professional relationship with him.

12

> ...I have found Mr. Rimberg to be an honest and forthright attorney with the highest degree of integrity and ethics. His word is his bond and you do not need a written contract to bind an agreement with him. ... whenever there is a charitable cause, Mr. Rimberg has always been available to donate his services and money to help. ... As a practicing lawyer, I do not believe the crime indicates the type of person Mr. Rimberg is, as he has spent a lifetime dedicating himself to worthwhile causes and has always been a man with a strong moral compass. ... I would hope that Mr. Rimberg's lifetime of hard work, his dedication to his family and the legal profession, his commitment to various charities as well as all of the people that Mr. Rimberg has tried to help over the years, deserve this Court's consideration. ...

Exhibit H.

Mr. Greene also recounts to your Honor, that in addition to Mr. Rimberg's extensive hands-on volunteer work, mentoring, and monetary contributions, he "is known in the legal profession as one who will take on hardship cases for individuals who have been wronged, providing his services whether or not they have the financial ability to pay." Exhibit H .

Mr. Rimberg's kindness has touched people who have experienced horrible situations which have left them tormented.  One recipient of Mr. Rimberg's generosity describes Mr. Rimberg as an "angel" who, *pro bono,* helped her family by guiding them "in the darkest times of [her] life" when her two young daughters were being sexually abused by someone in a position of authority, and Robert saw them "slipping through the cracks".

> ...My little girls were being harmed in the worst ways. ... Mr. Rimberg took my phone calls, he met with me on numerous occasions ... He never made me feel like a burden for reaching out to him. ... To have had the privilege to have been handled by him has helped changed our lives. Today my daughters worry about what outfit to wear tomorrow and what gift to buy their friend for

13

their birthday. … to have a friend out there like Mr. Rimberg, psychologically allowed me faith in humanity. We need fathers, protectors like Mr. Rimberg to be on the forefront of this war to protect victims. Mr. Rimberg did all of his work for free, with very little acknowledgement and recognition. His sole motive was to help us. He saw us slipping through the cracks, being faced with injustices and he did what he could to turn the tide. And he did. It is my hope that Mr. Rimberg continue to be the angel he has been to my daughters and their family. May he be granted the power and positions necessary to be a beacon of hope where there seems to be closed doors. May he soften the hearts of others and inspire people around him …

Exhibit I.

Rachel and Shirin Siony are also clients of Mr. Rimberg.  In their letter to Your Honor, they describe the kindness and professionalism they received from him over the past five years, despite owing him tremendous legal fees.

…He is not only extremely professional and (*sic*) master at what he does but most importantly, he has been very kind and has always displayed (*sic*) high level of integrity and trustworthiness. …There was a time that we owed his firm tremendous legal fees and we had no way of paying it …I firmly believe that no other lawyer would have given us the time of the (*sic*) day or would have the kindness to continue with our case, especially when everything looked very bleak. However, Robert was kindhearted and caring enough to carry us through. …There are no words that we can ever (*sic*) thank him enough. …

Exhibit J.

Rabbi Simcha Scholar, Executive Vice President of Chai Lifeline, Inc., one of the largest international organizations helping families cope with pediatric illness, loss, and trauma, writes about Robert's nearly two decades of hands-on volunteer work with his organization.

…I have known Robert Rimberg for nearly twenty years. During this time he has been intimately involved in our organization. Robert and his family have taken a very personal role in various

14

different cases of children and their families that are suffering from pediatric illness. He is a man who has shown incredible integrity, love and compassion in all his endeavors. There are many families within the worldwide Chai Lifeline system that depend upon his expertise, love and dedication to help them through their particular situation. I can only comment on Robert's dedication to sick children and to the overall community. I can sincerely say that the children and families need him to be involved in their situation to the optimum level. I ask that the court to take this into consideration and also to consider the needs of our families worldwide into their thought process. On behalf of the children and families of Chai Lifeline, I beseech the court on behalf of Robert. …

Exhibit K.

Rabbi Josh Blass is the Rabbi of Kehillas Bais Yehudah synagogue in Wesley Hills, New York which Mr. Rimberg and his family have attended for the past 11 years. In his letter to Your Honor, Rabbi Blass describes the special role Mr. Rimberg has played in the congregation, helping needy congregants while insisting on anonymity:

> …When I received a call from Robert a little while back asking to set up an appointment to meet, it immediately struck me that he and I have met on numerous occasions but almost always because I was the one calling upon him. He is a person that I can turn to for just about any personal or communal purpose. Advice about a [s]ynagogue matter, raising money for a congregant in need, even borrowing money for my own family—no request has ever been denied and each request was handled with the utmost of sensitivity. When Roberts (sic) children were younger he would always come to my home before the Jewish holidays with his children in tow with a large envelope of money for me to disperse to the needy of the community. The only condition is that no one would find out that he was behind the gesture. Again, always with sensitivity, generosity, and a spirit of decency. I have always known him to be direct, honest and someone who's (sic) ethics and integrity are beyond reproach. His character is reflected in his three amazing children. …

Exhibit L.

Israel Goldberg, Esq. has known Robert Rimberg for more than 30 years and been his law partner for twelve years and considers him to be a member of his immediate family. In his letter, he explains Robert's important role in the firm and how his sentencing will impact not just his immediate family, but also the families and employees of their small firm.

> …It is difficult for me to compose this letter because of my concern that I will not be able to convey, with words, my feelings and emotions in a manner worthy of your consideration in deliberating about the sentence you are charged with imposing on Mr. Rimberg. I am concerned my letter will fall short and not adequately convey who Robert is and what he means to his immediate circle of family and friends and the community. The effect of the sentence to be imposed will impact not just on the life of Mr. Rimberg and his immediate family but on the nine other attorneys and support staff at our firm and on the many people and organizations he has advised and helped (financially and in their personal matters) over the years. I have known Robert Rimberg and his wife for more than 30 years and have been his partner for twelve. I consider him not only a business partner but a member of my immediate family. … I have witnessed my partner's proclivity for magnanimity firsthand …

Exhibit M.

Mr. Goldberg also discusses how Robert does numerous charitable acts insisting that his involvement not be publicized:

> …Robert has always been a charitable person. Just a few months ago, at the urging of Robert, our firm gave substantial financial support to a project that involved the manufacturing and distribution of 50,000 pairs of shoes  to people who did not have the means to buy shoes because the purchase of shoes was a luxury they could not afford. I was brought to tears when the organizer of the project sent us a video of the distribution.[2] Robert

---

[2] A copy of the video has been sent to chambers.

was thrilled at the result but upset because our names appeared as supporters of the project. … Over the years Mr. Rimberg has donated of his resources (time and money) to charitable organizations such as Chai Lifeline (an organization that helps kids with cancer and lends support to the families) and educational institutions and has assisted abused women deal with their problems. In fact Robert has spent much time on pro bono activities to assist organizations and individuals. His good works and efforts are not publicized because Robert insists that it would serve no purpose. …

Exhibit M.

Mr. Rimberg's son Zachary credits his father with impressing upon him the need to be charitable to those less fortunate without the need to take credit from a very young age.

…As I child, I remember sitting in synagogue listening to the rabbi talk about charity. He would talk about an anonymous donor who helped a family that needed food for Sabbath, or a family that needed assistance to send their children to Jewish day school. I felt like I was in on a Gatsbian secret. It was my father, the man that silently helped out the community. I was always sure my prideful beam would give his secret away. …

Exhibit F.

Domenic M. Recchia, Jr., Esq., is a former member of the New York City Council, having also served as its Finance Chairman. He writes to Your Honor about the extensive charitable work Robert has performed on behalf of his constituents who could not afford an attorney and how he offered his help to them after Hurricane Sandy.

…My association with Robert Rimberg started out strictly business acquaintance and over the years it flourished into a real friendship. When I was a New York City Councilman there were dozens of time I reached out to Mr. Rimberg for my constituents who needed legal help he was always there to help and assist people who could not afford an attorney. I became an admirer of

his devotion to help those in need by donating his time and resources. But it was the days and weeks after Hurricane Sandy hit my district and Coney Island was literally under water that Robert Rimberg contacted me and asked how he could help my constituents and the community. I was amazed how he immediately got to work by sending resources to the Coney Island Community. I was amazed by his dedication and devotion to my constituents. During these times I realized that Robert Rimberg was someone I could rely on and go to for help. …

Exhibit N.

Andrew S. Fischer, Esq., knows Robert Rimberg as a longtime colleague and friend. Mr. Fischer discusses Robert's reputation for kindness and generosity, and how he has observed him quietly help people in difficult situations without the need for attribution.

… [Robert] is generous with his time, with his knowledge, and with his kindness for his fellow man. … I have heard many stories about Robert's kindness and generosity, how he will quietly, often without attribution, help people in difficult circumstances whether by financial or legal support or otherwise. Obviously, consequently, Robert is well-respected in that community for more than just his legal skills. … Robert Rimberg is a good man who has always acted honorably and honestly toward me and in every circumstance when we have interacted. … He is a fine colleague and more importantly a good friend and he will continue to be a friend whatever the outcome of this matter. Accordingly, I urge the Court in sentencing Robert Rimberg to recognize whatever mistake in judgment he may have made but, also, to allow this decent man to move on with his life's work.

Exhibit O.

Levi Cohen, a business owner, is a longtime client and friend of Robert Rimberg who he considers to be family:

…I have known Robert for many years now, as he has advised me on legal matters concerning business. I have come to see Robert not only as an excellent and astute lawyer, but a loyal friend and

18

confidante. … With time, I have come to see his magnanimous heart and generosity outside the realm of business. Character traits that are, personally, far more important to me than any legal or business decisions. Robert has always made himself available to me for advice both personally and professionally. He is an intrinsic part of my life. I have to come (sic) proudly call him family. …

Exhibit P.

Robert Rimberg is Steven Weg's mentor – and now his law partner. After graduating law school, Robert hired Steven as an associate and, 9 years later, made him a partner in his firm. Steven writes about Robert's frequent practice of providing *pro bono* assistance to those in-need, and the tremendous impact he has had on his life and the lives of others, both personally and professionally.

…I have heard countless stories of friends that he has helped over the years and have personally observed the assistance, whether emotional or financial, that he provides to his friends. … Over the years Robert has provided legal representation to many friends and clients pro bono for the sole reason that he is more concerned with their own personal and financial wellbeing than his own. I cannot count the number of times over the nearly ten years I have work for/with Robert that I have asked him which client to submit billing for and he responded that "they are going through rough times right now, let's not bill them." Robert's willingness to help others without receiving anything in return has taught me a lot about how to act like a "mensch" both in my personal and professional life. … Robert taught me that the responsibility of being a lawyer includes doing what is right for others as much as (if not more than) doing what is right for yourself. This letter does not do justice to show just how significant Robert has been to me (both professionally and personally), our firm, my family, his family, his friends and our clients. It is difficult to put into words the extent of the impact Robert has had on all of us and my belief that I would not be anywhere near where I am today without him. I hope that this Court carefully considers the tremendous positive impact Robert has had on all of our lives. …

19

Exhibit Q.

Joel S. Schneck, Esq. has known Robert Rimberg for more than twenty years. He began working for him as an associate after graduating law school and refers to him as his "career mentor". In his letter, he describes how Robert continued to pay and support him for several months after he suffered a brain aneurysm, although he was under no obligation to do so, and the volunteer work they have done together for Chai Lifeline.

> …I am sure others will advise the Court of the charitable work that Robert has done over the years. In particular, I worked on several matters for the Chai Lifeline organization, which exists to provide support to seriously ill children. I have seen the great work that Chai Lifeline has done as they have helped a good friend' (sic) son who has cancer. I appreciate that Robert allowed me to provide such rewarding work to Chai Lifeline. …In April 2003, I suffered a ruptured cerebral aneurism which required emergency brain surgery. This was less than four years into my working with Robert, I had no disability insurance, and he owed me nothing. Robert could have easily just let me go and I would have been in dire straits. Instead, Robert acted as a total mensch. Every pay day, Robert continued to pay me my salary, no questions asked. For over three months, when I was unable to work, Robert continued to pay me. Eventually, I was able to start working again, but was unable to make the commute from home in the Princeton, NJ area to our downtown office. Robert arranged for me to have a full work set up at my home, with all of the equipment, supplies, etc., that I needed in order to that I could work, no questions asked. As I was still recovering from brain surgery, I could only work part time; however, Robert continued to ensure that I received my full salary …

Exhibit R.

Solisha Fischetti has known Robert Rimberg for more than 20 years. She writes in her letter about Robert's kindness to others and towards her when she lost her job at Fidelity after the dot-com bubble burst.

> …In the months following the collapse of the technology bubble in March 2000, Fidelity terminated hundreds of employees. As a result, I found myself unemployed for the first time in 10 years. … After eleven months of interviewing with no results, I remembered an offer that Robert Rimberg had extended to me a few years prior. His words were "If you should ever need a job, please don't hesitate to call me." … On December 26, 2001, Robert hired me as the Office/Finance Manager for Goldberg & Rimberg PLLC. I've been working for the firm ever since. …Through the years I have witnessed countless acts of charity and kindness. In fact, Robert singlehandedly created and implemented the firm's Tuition Assistance Program which has made it possible for employees, like myself, to send our kids to college. …

Exhibit S.

### **Mr. Rimberg's Expressions of Remorse for His Misconduct**

Several people have written to Your Honor about Mr. Rimberg's extreme remorse for the conduct which this case is based upon and the awareness of the pain and hardship his conduct has caused for those he cares most about.  Israel Goldberg writes:

> … Robert has expressed his remorse for his conduct and has been a living example to us all of the serious consequences that can befall a person for failing to use better judgment. Since Robert's arrest, I have personally witnessed on a daily basis the pain that Robert has been living and experiencing knowing that his conduct has so seriously impacted his biological family as well as his office family. …

Exhibit M.

Domenic Recchia, Jr., Esq. writes:

> …When I learned of Robert's criminal charges I was surprised and saddened. He is someone who realizes his mistakes and Robert and I have had long conversations about his failings and disgrace and he will never repeat his behavior. He is deeply remorseful about letting down the partners and staff in his law law office that he built from nothing into a law firm that is very successful, innovative and helps many people in need. Robert Rimberg had to summon up the courage to face his wife, children and family members because he has caused them so much hurt. … Today, Robert is a humbled and broken hearted person who knows that he will work for the rest of his life to try to earn the trust of others and the respect of his family, friends and employees once again. …

Exhibit N.

Richard A. Solomon, Esq., has known Robert and his family for several years. He writes about Robert's extreme remorse, which he has expressed to him privately, for his conduct in this case:

> …Robert has privately communicated to me his remorse and recognizes the permanent damage incurred to his name, his business, his credit, and the hardship to his family and his professional colleagues. …

Exhibit B.

## **Other § 3553 Factors**

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

## The Seriousness of the Offense and Punishment

Mr. Rimberg has acknowledged the seriousness of the offense.  The law <u>requires</u> that he be punished in a fashion <u>no greater than necessary</u> to meet the goals of sentencing.  More than that would serve no greater good.  *See Gall*, 552 U.S. at 44 (recognizing that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing" [internal quotations omitted]).  Mr. Rimberg understands that general deterrence is required to be considered in imposing sentence.  As discussed later in this memorandum, there is much agreement that a shorter sentence in a white collar case is a sufficient general deterrent for white collar offenders.

### POINT IV

### THE LOSS OF MR. RIMBERG'S LAW LICENSE AND ABILITY TO EARN A LIVING IN HIS PROFESSION, AS WELL AS THE NUMEROUS OTHER COLLATERAL CONSEQUENCES HE WILL SUFFER, SUPPORT A SUBSTANTIAL VARIANCE.

As a result of his felony conviction, Mr. Rimberg's license to practice law will likely be revoked and has already been suspended.  At the age of 55, Mr. Rimberg, a brilliant and generous lawyer, will have to find another way to support himself and his family.  Both courts and scholars have recognized that the loss of one's reputation, career, income, assets, and livelihood are particularly acute and severe forms of punishment for licensed offenders such as Mr. Rimberg and appropriately merit a variance under § 3553(a).  *See, e.g., United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (downward

23

variance affirmed where defendant lost his teaching certificate and his state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for "just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)). Recently, in an insightful opinion, Judge Frederic Block, citing to *U.S. v. Pauley, supra,* awarded a 33 month variance and imposed a non-jail sentence *after trial* on a defendant convicted of possession of cocaine with intent to distribute. *United States v. Nesbeth,* 188 F.Supp.3d 179, 185 (EDNY 2016). Judge Block noted that there are "nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons", and concluded that the collateral consequences faced by a convicted felon formed a basis for a variance. We urge Your Honor to consider Mr. Rimberg's suspension and likely loss of his professional license, together with all of the collateral consequences that are entailed with disbarment in imposing sentence.

Under Federal law, Mr. Rimberg will suffer numerous additional collateral consequences. He will be unable to work in nearly all industries and employment that would be appropriate for him, including the lending industry (*see e.g.,* 12 CFR § 1026.36), the FDIC, even as an outside contractor (*see e.g.,* 12 CFR § 336.4), as a non-attorney representative of a client seeking any government benefits (*see e.g.,* 20 CFR § 404.1717), in the banking, commodities, or securities industries (*see e.g.,* 12 USC §§ 1818(e), (g)(1)(C), 1829(a), 7 USC § 12a(3)(D), 15 USC §§ 80b-3(e)(2), (e)(3), (f)), and in any government contracting

capacity (*see e.g.*, 48 CFR Part 9, Subpart 9.4,  Executive Order No. 12,549, 16,689; 5 CFR § 970.110(c), § 970.305, § 970.405; 48 CFR  § 9.406-2).

There are also very harsh collateral consequences to which Mr. Rimberg will be subject under New York state law. The consequence that is most impactful to Mr. Rimberg will be New York's ban on convicted felons obtaining a professional or occupational license, which will effectively preclude him from obtaining nearly any employment which requires either license. For example, more than 100 occupations in New York State require some type of license, registration, or certification by a state agency. The "good moral character" requirement for almost all of these provides tremendous discretion to deny a license for a convicted felon such as Mr. Rimberg, severely limiting his employment opportunities.  *See*, Special Committee of the New York State Bar Association, "*Re-Entry and Reintegration: The Road to Public Safety,*" (2006) at 18.

Given these types of collateral damage, courts have routinely held that for some white collar offenders a short, or non-prison sentence, meets the goals of sentencing. *See U.S. v. Coughlin*, 2008 WL 313099, at *5 (W.D. Ark. February 1, 2008) (for white collar crime, probation and home detention more effectively accomplish the goals of Section 3553(a)(2) than imprisonment).  In upholding a deviation from the Guidelines where a district court imposed probation instead of jail time, the Supreme Court recognized that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007) (listing restrictions

imposed on probationers, and quoting the Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) ("Probation is not granted out of a spirit of leniency … probation is not merely letting an offender off easily" (internal citations omitted)); *see also Coughlin*, 2008 WL 313099 at *5 ("Home detention and probation can be severe punishments, hugely restrictive of liberty, highly effective in the determent of crime and amply retributive").  For many, these penalties are as damaging as a custodial sentence and achieve the goals of Section 3553(a)(2).  *Id.* at *6 ("the severely punitive quality of probation [is] capable of deterring corporate executives" from engaging in similar conduct again).  Offenders on supervised release, like *Gall*:

> may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.

*Id.* at 48.  While a lengthy imprisonment is concededly a more onerous form of punishment, it is not always the most effective one for a particular defendant. Mr. Rimberg is a prime candidate for a non-incarceration sentence, given his complete lack of prior contact with the criminal justice system, the non-violent nature of his offense, and his strong network of family, friends, and colleagues who continue to support him, as evidenced by the numerous letters of support written to Your Honor.

## POINT V

## MR. RIMBERG IS HIGHLY UNLIKELY TO RE-OFFEND AND IS NOT A DANGER TO THE PUBLIC.

18 U.S.C. § 3553(a)(3) requires that a sentencing court consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." *United States v. Pizzino*, 419 F. App'x 579, 583-84 (6th Cir. 2011) (sentence vacated where court failed to address defendant's low risk of recidivism and extensive rehabilitation); *United States v. Pritchard*, 392 F. App'x 433, 437-42 (6th Cir. 2010) (sentence vacated due to court's failure to address defense psychologist's report that defendant had a low risk of recidivism); *United States v. Thomas*, 498 F.3d 336, 339-41 (6th Cir. 2007) (sentence vacated where court failed to consider low rate of recidivism; Court's statement that it read the sentencing report was insufficient.)

There can be no dispute that Mr. Rimberg poses a negligible risk of recidivism and is not a danger to the public.[3] Indeed, the United States Sentencing Commission's own empirical research shows that Mr. Rimberg's personal characteristics make him the least likely to recidivate than virtually *any* other type of defendant. According to *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines Release One,* Exhibit 9 (May 2004), (available at http://www.ussc.gov, last accessed April 21, 2017), offenders who are in Criminal History Category I and over 50 years old recidivate a mere 6.2% of the time. Older defendants like Mr. Rimberg recidivate even less. The

---

[3] We note that the offense conduct occurred seven years ago in 2010.

27

subset of true "first offenders"- those who have zero Criminal History points - as opposed to all offenders in Criminal History Category I - are even less likely to re-offend. *See,* Exhibit Six to *Recidivism and the "First Offender", Release Two* (May 2004) (available at http:/www.ussc.gov, last accessed May 26, 2015). Defendants in this category re-offend a mere ***3.6%*** of the time in the 24 months following initiation of probation or release from confinement. *See also United States v. Wunder*, 2010 WL 654754, at * 3 (D. Kan. Feb. 23, 2010) ("This was defendant's first criminal offense. He has no prior arrests. His chance of recidivism is less than some other persons who may also have a criminal history category of I."); *United States v. Oldani*, 2009 WL 1770116, at *5 (S.D.W. Va. June 16, 2009) (observing that "[b]ased on empirical research, the commission found that a defendant with no prior arrests or criminal history has . . . the lowest rate of recidivism of any group in the study"). In addition, the Sentencing Commission also found that someone with Mr. Rimberg's employment status, educational attainment, marital status, and lack of illicit drug use all make him significantly less likely to recidivate. *See*, Exhibit 10 to *Measuring Recidivism, supra.*

The Sentencing Commission has made clear that "[t]here is no apparent relationship between the sentencing guideline final offense level and recidivism risk. ... the guideline offense level is not designed to predict recidivism, while the criminal history computation is designed to predict [it]." *Measuring Recidivism* at p.13. Mr. Rimberg's complete lack of contact with the criminal justice system prior to this case demonstrates that he, like the defendants in *Oldani* and

*Wunder*, is not a danger to society. *See Wunder*, 2010 WL 654754, at * 3 (imposing sentence approximately 60% less than the guideline range's minimum; stating "[t]he court does not believe a lengthy jail term is necessary to protect the public from further crimes by defendant"); *Oldani*, 2009 WL 1770116, at *7 (stating that "[b]ased on his status as a true first offender, there is little likelihood that [the defendant] will be brought before the criminal justice system in the future.") It is therefore pellucidly clear that the imposition of a non-incarceratory sentence for Mr. Rimberg would not risk public safety.

### 3.) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Prison is not necessary to provide Mr. Rimberg educational or vocational training, medical care, or other correctional treatment.

### 4) the kinds of sentence and the sentencing range established for- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines.

This Court has broad discretion in determining a proper sentence based upon consideration of the factors contained in § 3553(a). There is no mandatory minimum and the maximum term of imprisonment is 5 years. 18 U.S.C. § 1960, PSR at ¶ 83. The Court may impose a term of probation between one and five years, and a term of supervised release of not more than three years. PSR at ¶¶ 86—89. Despite this, the PSR notes that, "Since the applicable guideline range is in Zone C of the Sentencing Table, the defendant is ineligible for probation", citing Guidelines § 5B1.1, comment (n.2). PSR at ¶ 89. *See also* PSR at ¶ 84:

> ...since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release. ...

However, in the wake of *United States* v. *Booker*, 543 U.S. 220 (2005) the Sentencing Table and § 5B1.1—like the rest of the Guidelines—are merely advisory and therefore does make one "ineligible for probation". *See* 18 U.S.C. §§ 3561(a)(1-3), the statute which governs the imposition of probation for those other than domestic violence offenders, which states:

> **(a) In general.**--A defendant who has been found guilty of an offense may be sentenced to a term of probation unless—
>
>> **(1)** the offense is a Class A or Class B felony and the defendant is an individual;
>>
>> **(2)** the offense is an offense for which probation has been expressly precluded; or
>>
>> **(3)** the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.

*See, e.g., United States v. Ty Warner*, 792 F.3d 847 (7th Cir. 2015), (affirming sentence of probation and community service for defendant whose advisory Guideline range of 46-57 months of imprisonment placed him in "Zone D" of the "Sentencing Table". "Although ... Warner was eligible for probation under [his crime of conviction], the guidelines *advised* imprisonment rather than probation due to the length of his sentencing range"). *Id.* at 857 (emphasis added). This Court may therefore sentence Mr. Rimberg to probation, as long as the § 3553(a) factors are properly considered.

Mr. Rimberg has been living with the impact of his misconduct for nearly two years and, not to seem trite, he has truly been punished, and will continue to be punished every day, for the rest of his life for what he has done. Mr. Rimberg's conduct has resulted in the likely loss of his legal career and employment in related fields. He will be considered a pariah in the business world. Viewed in this light, an extended period of incarceration for punishment's sake alone simply serves no necessary or proper purpose. Given all of the circumstances at bar, a probationary sentence would more than adequately meets the goals of sentencing, and would serve the ends of justice and society equally as well, if not better than a jail sentence.

### (5) any pertinent policy statement.

Under Sentencing Guideline § 5H1.11, "military, civic, charitable, or public service, employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." However, the Second Circuit has recognized that a court is authorized to grant a downward departure if such good works are "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *United States v. Canova*, 412 F.3d 331, 358 (2d Cir. 2005) (*quoting Koon v. United States,* 518 U.S. 81, 96 (1996)).  In addition, a sentencing court should fully consider and weigh a defendant's charitable activities in connection with its analysis of the § 3553(a) factors. *United States v. Fishman*, 631 F. Supp. 2d 399 (S.D.N.Y. 2009).

Mr. Rimberg's long history of hands-on charitable acts, including numerous instances of *pro bono* representation, and anonymously providing assistance to community members in need is consistent with the types of cases where such departures are permissible. In *United States* v. *Fred Cooper,* 394 F.3d 172 (3d Cir. 2005), for example, the sentencing court granted a four level downward departure based upon Cooper's charitable donations and activities. The court found that his charitable acts—which included organizing and running a youth sports program in a depressed area and mentoring its participants—were truly exceptional.  The Third Circuit affirmed, noting that Cooper's acts were:

> ...not the detached acts of charity one might ordinarily expect from a wealthy business executive. They [were,] in a very real way, hands-on personal sacrifices, which have had a dramatic and personal impact on the lives of others. ...

*Id.* at 177. *See also, United States v. Greene*, 249 F.Supp.2d 262, 265 (S.D.N.Y. 2003), (seven level departure based upon defendant's charitable work and community service, resulting in a sentence of probation where the Guidelines were 18-24 months).

**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

**<u>The Need to Provide Restitution to the Victims</u>**

All of the proceeds of the offense were deposited into accounts controlled by law enforcement. PSR at ¶ 18. There is therefore no loss to the government or request for restitution.

**<u>No Fine Should Be Imposed.</u>**

32

## **CONCLUSION**

Based upon Mr. Rimberg's long history of offering charitable assistance to those in need, his current family circumstances, and his loss of his career we respectfully request that Your Honor temper justice with mercy and impose a non-incarceration sentence on Mr. Rimberg which does not include any period of probation or other supervision.

Dated:  October 2, 2017

><i><b>/s/ Michael F. Bachner</b></i>
>MICHAEL F. BACHNER
>HOWARD WEINER
>Bachner and Associates, P.C.
>*Attorneys for* Robert Rimberg
>39 Broadway, Suite 1610
>New York, NY 10006
>O: (212) 344-7778
>F: (212) 344-7774
>mb@bhlawfirm.com
>hw@bhlawfirm.com